UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
FATEMA ISLAM,
Individually and on behalf of a class,

                      Plaintiff,                      MEMORANDUM AND ORDER
                                                                          16-CV-6883

    - against –

CREDIT CONTROL, LLC, d/b/a
CREDIT CONTROL & COLLECTION, LLC,

                      Defendant.
---------------------------------------------------------x
GLASSER, Senior United States District Judge:

       Plaintiff Fatema Islam commenced this action against the Defendant, Credit Control, LLC ("Credit Control"), seeking damages and declaratory relief for Defendant's alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Pending before the Court is Credit Control's motion to dismiss pursuant to Fed. R. Civ. P. § 12(b)(6), which Plaintiff opposes. For the reasons set forth herein, Defendant's motion is GRANTED.

## BACKGROUND

       Defendant is in the business of collecting debts owed to others. ECF 1, Complaint ("Compl."), at ¶ 5. Plaintiff is a resident of New York who incurred a debt of $14,413.78 "for personal, financial or household use and not for business purposes." Id. at ¶¶ 4, 8. On or about February 8, 2016, Credit Control mailed a debt collection letter to the Plaintiff seeking to recover the unpaid financial obligation. Id. at ¶ 7; ECF 1-3. The letter is from Credit Control and includes the statute-prescribed "validation notice." It reads, in relevant part:

       Original Creditor: Bank of America, N.A.
       Current Creditor: **Bank of America, N.A.**

1

> . . .
>
> RE: Your account with our client
>    **Bank of America, N.A.**
>
> ORIGINAL CREDITOR: Bank of America, N.A. . . .
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. <u>If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.</u>

ECF 1-3 (emphasis added).

## LEGAL STANDARD

In deciding a Rule 12(b)(6) motion to dismiss, and accepting the facts pleaded as true, Plaintiffs must state a claim that is plausible on its face from which the Court can draw the reasonable inference that the claim has merit. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

## DISCUSSION

### I. The Fair Debt Collection Practices Act

The FDCPA was enacted in response to a "serious national problem" of debt collection abuse. S. REP. 95-382, 2, 1977 U.S.C.C.A.N. 1695, 1696. The enacted purpose of the statute was to eliminate those "abusive debt collection practices," while simultaneously assuring that non-abusive debt collectors "are not competitively disadvantaged." 15 U.S.C. § 1692(e). The statute requires debt collectors to issue a written "validation notice," either in the initial communication with a consumer or within five days of that initial communication. The

validation notice must contain specific information that the statute enumerates. 15 U.S.C. § 1692g(a). Relevant here, it reads that:

> a debt collector shall . . . send the consumer a written notice containing . . .
>
> a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(5). The validation notice is intended to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." Debt Collection (Regulation F), 78 FR 67848-01.

In analyzing whether a communication runs afoul of the FDCPA, courts apply an objective, "least sophisticated consumer" standard. Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 363 (2d Cir. 2005) (citation omitted). In so doing, a defendant's communication is viewed "from the perspective of a debtor who is uninformed, naive, or trusting, but is making basic, reasonable and logical deductions and inferences." Dewees v. Legal Servicing, LLC, 506 F. Supp. 2d 128, 132 (E.D.N.Y. 2007); Clomon v. Jackson, 988 F.2d 1314, 1319 (2d Cir. 1993) ("[T]he courts have carefully preserved the concept of reasonableness."). This standard "seeks to protect the naive from abusive practices . . . while simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations of debt collection letters." Greco, 412 F.3d at 363.

## II. Plaintiff's Claims

Plaintiff's argument centers on the sentence in the collection letter that tracks section 1692g(a)(5), and is replicated supra. She claims that this language is confusing and misleading because the original and current creditor are the same, Bank of America, N.A. ECF 8, Opposition, at pp. 2-5. Plaintiff contends that Defendants should have either excluded that language entirely or added qualifying language to explain it. Id.

Plaintiff cites a number of cases to support her argument. In each, the court held that a debt collector's failure to provide a 1692g(a)(5) notice did not violate the FDCPA because the original and current creditor were the same. See e.g. Morse v. Kaplan, 468 Fed.Appx. 171, 173 (3d Cir. 2012) (noting that to include the statutory language in such a case would be "confusing"); Shimek v. Weissman, Nowack, Curry & Wilco, P.C., 323 F. Supp. 2d 1344, 1348 (N.D. Ga. 2003), aff'd, 374 F.3d 1011 (11th Cir. 2004). Additionally, the Federal Register instructs that "[a] notice need not offer to identify the original creditor unless the name and address of the original creditor are different from the current creditor." 53 Fed. Reg. 50097-02. In this District, a debt collector need not include that notice where the collection letter "expressly identified the original creditor and its address in the validation notice." Cavallaro v. Law Office of Shapiro & Kreisman, 933 F. Supp. 1148, 1154 (E.D.N.Y. 1996). Clearly, the added notice claimed to be offensive was not required in this case, but neither was it forbidden.

Further, the validation notice is not "overshadowed or contradicted by other language in communications to the debtor." Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 90 (2d Cir. 2008). Language is "overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights." Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996). Still, "even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read the collection notice with some care." Greco, 412 F.3d at 363.

The following few paragraphs from the class action complaint are informative for their hyperbolic "bizarre and idiosyncratic," id., interpretation of pristine language:

> 19. Because the current creditor is the same as the original creditor here, section 1692g(a)(5) is inapplicable
>
> 20. Collection notices are deceptive if they can be reasonably read to have two or more different meanings, one of which is accurate.

4

> 21. The word **if** in "if different from the current creditor" is the key word in section 1692g(a)(5) in determining whether this paragraph need be included in the Validation Notice given to the consumer. In this case, it should not have been included since the current creditor is not different from the original creditor.
>
> 22. The inclusion of the language of section 1692g(a)(5) is confusing to the consumer in that it leads the consumer to believe that the debt may have been sold or assigned when it fact it was not. . . .
>
> 25. As a result of defendant's violation of the FDCPA, plaintiff has been damaged and is entitled to statutory damages, actual damages, costs and attorney fees.

Complt. at ¶¶ 19-22, 25.

This Plaintiff is alleging to have been damaged because the letter she received meticulously re-states the language of the statute, and parsing the letter as a Philadelphia lawyer as if it were a municipal bond agreement, this seemingly "least sophisticated consumer" claims to have been confused by the word if in the statute. See Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 595 (6th Cir. 2009) citing Jacobson v. Healthcare Financial Services, Inc., 434 F.Supp.2d 133, 138 (E.D.N.Y. 2006)) aff'd in part, vacated in part and rev'd in part, 516 F.3d 85 (2d Cir. 2008). That gratuitous word and the words that follow lead the consumer (an imaginary person, not this Plaintiff), to believe that her "debt may have been sold or assigned when in fact it was not." Complt. at ¶ 22. "We read the complaint in its entirety and give it a 'common sense appraisal.'" Miller, 561 F.3d at 595. Precisely how or why would the Plaintiff be "confused" or aggrieved, or deemed abused or harassed if the debt had been sold or assigned? Would her debt be increased or altered in any way? Does she have a vested interest in the identity of her creditor?

This case makes stunningly appropriate what was written in Jacobson, 434 F.Supp.2d at 138-139, and cited with approval in Miller, 561 F.3d at 596, and in Federal Home Loan Mort. Corp. v. Lamar, 503 F.3d 504, 513-14 (6th Cir. 2007):

It is interesting to contemplate the genesis of these suits. The hypothetical Mr. Least Sophisticated Consumer ('LSC') makes a $400 purchase. His debt remains unpaid and undisputed. He eventually receives a collection letter requesting payment of the debt which he rightfully owes. Mr. LSC, upon receiving a debt collection letter that contains some minute variation from the statute's requirements, immediately exclaims 'This clearly runs afoul of the FDCPA!' and-rather than simply pay what he owes-repairs to his lawyer's office to vindicate a perceived 'wrong.'

Also observed in all three cases cited above was that:

Ironically, it appears that it is often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by [the FDCPA], not the individual who has been threatened or misled. The cottage industry that has emerged does not bring suits to remedy the 'widespread and serious national problem' of abuse that the Senate observed in adopting the legislation, 1977 U.S.C.C.A.N. 1695, 1696, nor to ferret out collection abuse in the form of 'obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.' Id. Rather, the inescapable inference is that the judicially developed standards have enabled a class of professional plaintiffs.

Thus far this year in the Eastern District of New York, more than 600 FDCPA cases have been filed not markedly dissimilar from this one in which damages are sought for some fantasy harm that the statute was plainly not intended to avoid. The types of harm the statute was intended to protect against are listed in 15 U.S.C. § 1692e. What is complained of here is not one of them, but attorney's fees and costs would be awarded were a "judicially developed standard" to decide that it was.

It would do well to recall here a familiar principle pertaining to the violation of a statute. A violation of a statute giving rise to civil liability is absolute if there is a causal connection to a practical degree between the violation and the injury. The unexcused violation of a statute not creating civil liability will give rise to liability if the plaintiff is a member of the class the statute was designed to protect, the injury is the kind the statute was designed to prevent, and there is a causal connection between the violation and the injury. The violation of this statute gives rise to civil liability. It was intended to eliminate abusive debt collection practices, and to protect

6

consumers from deceptive or harassing action taken by debt collectors.  Carlin v. Davidson Fink LLP, 852 F.3d 207, 214 (2d Cir. 2017).  What is the harm complained of here?  Confusion; a belief that the debt may have been sold or assigned, neither of which, assuming their truth, smacks of abuse, deception or harassment.  It is interesting to note that in the first and second causes of action in her complaint, Plaintiff asks for statutory and actual damages.  Complt. at ¶¶ 25, 31.  In the "wherefore" clause, actual damages are not claimed but attorney's fees, litigation expenses and costs of suit are.  Id. at p. 7.  "There comes a point where this Court should not be ignorant as judges of what we know as men."  Watts v. State of Ind., 338 U.S. 49, 52 (1949).

In sum, the FDCPA has not been violated.  The Defendant is sought to be held responsible for observing it in its entirety.  To apply the statute in that event evokes the teaching of Judge Cardozo who, in another context, cautioned that "[s]tatutes must be so construed, if possible, that absurdity and mischief may be avoided."  In re Rouss, 221 N.Y. 81, 91 (1917); see also John F. Manning, The Absurdity Doctrine, 116 Harv. L. Rev. 2387 (2003).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

SO ORDERED.

Dated:       Brooklyn, New York
             June 27, 2017

                                             /s/
                                             I. Leo Glasser